UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                     :
AFTERN SANDERSON,                    :
                                                     :
                               Plaintiff,   :              1:19-cv-8423-GHW
                                                     :
                          -v –                           :                    <u>ORDER</u>
                                                     :
LEG APPAREL LLC, *et al.*,           :
                                   Defendants.  :
                                                     :
----------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/27/2023

GREGORY H. WOODS, United States District Judge:

      At the conference on October 27, 2023, Plaintiff requested permission to testify at trial in a narrative fashion, rather than by posing questions to himself. As the Court explained at that conference, narrative testimony presents an issue because it deprives Defendants of the opportunity to object to inadmissible testimony before it is offered. However, the Court was willing to accommodate Plaintiff's request. To facilitate a presentation of the narrative of the facts, the Court asked if Plaintiff could submit a detailed outline of his proposed testimony so that Defendants could object to any inadmissible topics. Dkt. No. 335. On November 7, 2023, Plaintiff did so. On November 13, 2023, Defendants submitted their objections. Dkt. No. 354.

      The Court's provisional rulings on Defendants' objections are listed below. "Sustained" means that Plaintiff may not offer the corresponding testimony at trial because it violates one or more of the Federal Rules of Evidence. "Overruled" means that Plaintiff may offer the corresponding testimony at trial. The Court's provisional rulings are limited to the testimony as presented in Plaintiff's outline. These rulings are provisional: the Court will entertain any argument from the parties about them. However, the Court believes that these provisional rulings will be helpful for the parties to have in hand in writing in advance of Plaintiff's testimony at trial.

      Many of the sustained objections relate to testimony phrased as conclusions or arguments.

Where the Court has sustained an objection, the Court is not ruling that Plaintiff may not make the corresponding statement at trial when he is not on the witness stand testifying. Some statements may be inadmissible as testimony, but permissible as arguments Plaintiff may choose to make while representing himself—for example, as part of his opening statement or closing arguments. In addition, where the Court has sustained an objection to testimony phrased as a conclusion or argument, the Court is not precluding Plaintiff from offering testimony regarding the underlying facts of which he has personal knowledge that led him to that conclusion or argument.

The Court understands Plaintiff intends to limit his testimony to the topics discussed in his outline. If Plaintiff chooses to expand on his outline at trial, he may do so, but he must do so by asking himself questions and answering them, so that Defendants have the opportunity to object to improper testimony before it is offered.

| Excerpt | Outline Page | Ruling |
| --- | --- | --- |
| "declaratory, injunctive and equitable relief, as well as monetary damages" | 1 | Sustained, F.R.E. 401 and 403. |
| "Infliction of emotional distress" | 1 | Sustained, F.R.E. 401 and 403 |
| "42 U.S.C. §1981" | 1 | Sustained, F.R.E. 401 and 403 |
| "The conduct of Defendants and its employees was knowing, malicious, willful, wanton and/or showed a reckless disregard for Plaintiff. As a result, the Plaintiff has suffered and continues to suffer economic and non-economic damages, permanent harm to his professional and personal reputation as well as severe mental anguish and emotional distress. Plaintiff met the definition of an 'employee' under all applicable statutes." | 1 | Sustained, F.R.E. 602 and 701 |
| "which is standard operating procedure before employment commences" | 1 | Sustained, F.R.E. 401, 602, and 701 |
| "with the intent of instigating a racially charged confrontation" | 4 | Sustained, F.R.E. 602 |

2

| | | |
|---|---|---|
| "after he made the comment he looked directly at me and spoke with a tone of extreme animosity" | 4 | Overruled |
| "expecting a reaction." | 4 | Sustained, F.R.E. 602 |
| "than the other similarly situated white team Members" | 6 | Sustained, F.R.E. 403 and 701 |
| "These discriminatory circumstances give rise to an inference of discrimination based on my membership in a protected class, African American." | 6 | Sustained, F.R.E. 403 and 701 |
| "I was discriminated against by being treated in a disparate manner of similarly situated team members of different protected classes" | 7 | Sustained, F.R.E. 403 and 701 |
| "with the malicious and racially motivated intention" | 8 | Sustained, F.R.E. 602 |
| "This was disparate treatment as similarly situated white colleagues" | 8 | Sustained, F.R.E. 403 and 701 |
| "Shortly after Victor started, he informed me that during his interview process Defendants engaged in an extremely unprofessional conversation. The conversation as recounted to me by Victor Doggett follows, Arthur Lavitt: 'Where is Aftern? He should meet Victor' Melissa Romanino (Defendant): 'He's in Martha's Vineyard' Arthur Lavitt: 'Who's he with?' Kayla Coppola: 'with his boyfriend' Melissa Romanino (Defendant): 'You don't know that' Kayla Coppola: 'I know' Thereafter as Victor Doggett recalls, humorous banter ensued, of which I was the subject and victim." | 8–9 | Overruled, but subject to a limiting instruction |
| "Victor Doggett felt their comments to be deplorable, reprehensible and completely outrageous, as any reasonable person would find." | 9 | Sustained, F.R.E. 602 and 701 |
| "I felt that the fate of termination awaited me at Leg Apparel" | 9 | Overruled |

3

| | | |
|---|---|---|
| "owned by Jewish people and the homophobic views of some Jewish sects, due the rumors started by Ms. Coppola. Torah law expressly forbids the specific act of male homosexuality. I have observed and experienced this in previous jobs where employees were terminated when Jewish management learned or suspected that they were homosexual" | 9 | Overruled |
| "This possible loss of income had me extremely frightened and nervous." | 9 | Overruled |
| "Additionally, Romanino (Defendant) told me that Victor Doggett made comments about her daughter appearing thin, malnourished and anorexic, then Romanino (Defendant) said 'He (Victor Doggett) had to go.'" | 9 | Sustained, F.R.E. 403 |
| "Contrary to the real reason Victor Doggett was terminated, Nelly Perrone, HR Manager at the time, told Victor that he was being terminated due to budget cuts, and I was instructed to say the same to Victor when he called me after his termination." | 10 | Sustained, F.R.E. 602 and 403 |
| "During Victor Doggett's time at Leg Apparel, I was present when team members would joke amongst themselves on numerous occasions speculating about his sexual orientation. The team members would joke about Victor Doggett's comments to them that he felt in a previous life that he was a French woman with long flowing hair. I found this type of discussion to be extremely disrespectful, unprofessional and discriminatory because the team members were once again speculating about their perception of Victor Doggett's sexual orientation in a negative way." | 10 | Overruled |

| | | |
|---|---|---|
| "Their conversations about Victor were unprofessional, sexually inappropriate and contributed to a hostile work environment." | 10 | Sustained, F.R.E. 403 and 701 |
| "lashed out" | 10 | Overruled |
| "in an obvious rage of contempt that her African American subordinate would have a successful conference call and with the malicious intent to cause me emotional distress" | 10 | Sustained, F.R.E. 602 |
| "as they have fired other employees after they file a complaint" | 10 | Sustained, F.R.E. 602 |
| "I did not want to lose my job." | 10 | Overruled |
| "lashed out again" | 11 | Overruled |
| "in an obvious rage of contempt that her African American subordinate would have a successful conference call, and again with the malicious intent to cause me emotional distress" | 11 | Sustained, F.R.E. 602 |
| "this was disparate treatment, thus supporting an inference that Romanino's (Defendant) comments were motivated by a discriminatory intent." | 11 | Sustained, F.R.E. 403 and 701 |
| "and she used her superordinate position over me to inflict emotional distress, humiliation and embarrassment." | 11 | Overruled |
| "Thus, I was engaging in a protected activity." | 12 | Sustained, F.R.E. 403 and 701 |
| "there have been 7 instances of complaints of sexual harassment. These incidents were widely known and discussed throughout the office for years." | 12 | Sustained, F.R.E. 403, 602, and 802 |
| "Defendants had a clear history of protecting senior management harassers and terminating complainants" | 12 | Sustained, F.R.E. 403, 602, and 701 |
| "This was part of 'the company's' discriminatory culture." | 12 | Sustained, F.R.E. 403 and 701 |
| "I found Leg Apparel/Amiee Lynn to be a 'good Ole Jewish boys club' where they protect their own." | 12 | Overruled |

| | | |
|---|---|---|
| "Since Mr. Ford (White) started working for Leg Apparel in January 2017, he has been shown considerable preference by Ms. Romanino (Defendant) and especially by her supervisor, Mr. Lavitt" | 13 | Overruled |
| "The NYSDHR factcheckers noted that my report was superior to Mr. Ford's report in their investigation." | 14 | Sustained, F.R.E. 403, 802, and 1002 |
| "My termination was an adverse employment action. This adverse employment action and the sequence of events occurred under circumstances giving rise to an inference of discrimination based on my membership in a protected class." | 16 | Sustained, F.R.E. 403 and 701 |
| "It is quite interesting that Defendants' attorney stated that Defendants Romanino and Spolansky should be dismissed from my complaint without any explanation, leaving Diamond as the only individual Defendant." | 16 | Sustained, F.R.E. 401 and 403 |
| "Any reasonable person would infer discriminatory intent because I opposed discrimination and was subsequently retaliated against." | 17 | Sustained, F.R.E. 403 and 701 |
| "My termination was an Adverse Employment action" | 17 | Sustained, F.R.E. 403 and 701 |
| "were all officers in the company Leg Apparel/Amiee Lynn, with the power to make employment decisions, i.e., hire and fire, and having company policymaking authority," | 17–18 | Overruled |
| "(Causal Nexus)" | 18 | Sustained, F.R.E. 403 and 701 |
| "Defendants terminated my employment with 'the company' (Defendant) in a willful and wonton disregard to (SONDA)." | 18 | Sustained, F.R.E. 403 and 701 |
| "(Temporal Proximity)" | 18 | Sustained, F.R.E. 403 and 701 |
| "(Temporal Proximity)" | 19 | Sustained, F.R.E. 403 and 701 |
| "Later, in response to my NYSDHR complaint, Defendants backtracked and claimed I was terminated because I was not productive," | 19 | Overruled |

| | | |
|---|---|---|
| which I rebutted, citing numerous instances of my productivity, significantly reducing the time of producing reports and providing detailed analysis of business situations and risks, thus elevating the level of planning expertise at the Company and my assistance to team members." | 19 | Sustained, F.R.E. 802 and 1002 |
| "On December 5, 2017, I submitted to the NYSDHR my rebuttal to Leg Apparel's Response" | 19 | Sustained, F.R.E. 403 |
| "completely denying ALL the ridiculous, and trumped up charges for my termination." | 19 | Sustained, F.R.E. 403, 802, and 1002 |
| "which gives rise to an inference of discrimination" | 19 | Sustained, F.R.E. 403 and 701 |
| "April 21, 2018, I submitted my rebuttal to Leg Apparel's EEOC position statement," | 20 | Sustained, F.R.E. 403 |
| "completely denying ALL the ridiculous, outrageous, trumped up allegations by Leg Apparel as to their pretextual reasons for my termination" | 20 | Sustained, F.R.E. 403, 802, and 1002 |
| "Therefore, Defendants stated reasons for my termination are pretextual, and supporting an inference of employment discrimination." | 20 | Sustained, F.R.E. 403 and 701 |
| "Obviously, Defendants and White employees who I made complaints about their poor work habits a year prior, colluded and retaliated against me 2 days after I wrote a letter to Romanino (Defendant) and HR complaining about Romanino (Defendant) repeated harassing comments which any reasonable person would find offensive." | 20 | Sustained, F.R.E. 403, 602, and 701 |
| "This was obviously a pretext to terminate me, thus supporting an inference of discrimination and if need be brought to light many months later as the reason why I was terminated, as Defendants were 'lying in wait'" | 20 | Sustained, F.R.E. 403, 602, and 701 |

| | | |
|---|---|---|
| "Defendant's unsupported reason for terminating me from my job, the temporal proximity of my termination and my prior complaint opposing discrimination give rise to an inference of discrimination and retaliatory action by Defendants." | 21 | Sustained, F.R.E. 403 and 701 |
| "On March 30, 2018 NYSDHR found probable cause existed that I was indeed discriminated against by the defendants on the basis of Race/Color, Sexual Orientation, and Opposing Discrimination/Retaliation. They cited the reviews of Amiee Lynn/Leg Apparel where prior to my employment Defendants had engaged in in questionable and illegal employment practices and lack of any documentation supporting poor work performance, no signed statements or affidavits. Two independent reasonable factcheckers of the NYSDHR came to the same conclusions and the factcheckers supervisor concurred." | 21 | Sustained, F.R.E. 403, 802, and 1002 |
| "During February of 2019, in expectation of hearing with the NYSDHR, I obtained 6 personal character references from close friends attesting to my impeccable character and how my termination and subsequent legal proceedings with Defendants has negatively affected my mental health." | 22 | Sustained, F.R.E. 403, 802, and 1002 |
| "On May 16-17, 2019, I expressed desire for NYSDHR to move my case to the US Federal Court." | 22 | Sustained, F.R.E. 403 and 802 |
| "On June 18, 2019, my request was granted, and on June 18, 2019 an Administrative Convenience Dismissal of the NYSDHR case was issued, in order for me to proceed with the entire matter to US Federal Court." | 22 | Sustained, F.R.E. 403 |

8

| | | |
|---|---|---|
| "I was diagnosed with Anxiety Disorder (F41.9) and Obsessive-Compulsive Disorder (F42.2) from the extreme emotional distress arising from circumstances that occurred at Leg Apparel and my subsequent termination." | 22 | Sustained, F.R.E. 403, 701, and 802 |
| "I had obsessive thoughts about various occurrences at Leg Apparel, fear and anxiety about the subsequent legal proceedings and nightmares about the workplace environment at Leg Apparel." | 22 | Overruled |
| "While under Dr. Mecklers' care she initially prescribed for me Prozac 10mg Oral Capsule x 1 PO once daily which she later increased to 30mg per day "for Anxiety Disorder [and] Obsessive Compulsive Disorder and Prazosin HCI Img Oral Capsule x 1 PO daily at bedtime for nightmares" | 22–23 | Sustained, F.R.E. 403 and 802 |
| "to address the depression, anxiety, obsessional thoughts, and trauma I experienced from the harassment and employment termination at Leg Apparel." | 23 | Overruled |
| "On August 13, 2019 received a Right to Sue letter from the EEOC." | 23 | Sustained, F.R.E. 403 |
| "Ms. Wells diagnosed that I had an ongoing demonstration of Post-Traumatic Stress Disorder due to the series of events at Leg Apparel that created a traumatic experience. Also, Ms. Wells observed that I exhibited symptoms of depression, low mood, increased & frequent agitation, severe anxiety, intrusive & obsessive thoughts and irrational concerns related to the traumatic incidents I experienced at Leg Apparel." | 23 | Sustained, F.R.E. 403 and 802 |
| "I also observed the disparate treatment" | 23 | Sustained, F.R.E. 403 and 701 |
| "My observation of disparate treatment further supports an inference of racial discriminatory intent by Defendants and a racially hostile work environment" | 24 | Sustained, F.R.E. 403 and 701 |

| | | |
|---|---|---|
| "Also, during my time at Leg Apparel, another person of color by the name of Monesha was also fired. The general understanding and discussion in the office was that Monesha was fired because she frequently complained about her supervisor, Kim Portante," | 24 | Sustained, F.R.E. 403, 602, and 802 |
| "further supporting an inference of racial discrimination by Defendants and a racially hostile work environment." | 24 | Sustained, F.R.E. 403 and 701 |
| "Thus Romanino (Defendant) perpetuated the corporate hostile work environment at Leg Apparel/Amiee Lynn. Any reasonable person would feel this was a hostile work environment." | 24 | Sustained, F.R.E. 403 and 701 |
| "I found it ironic that Romanino (Defendant) made sexually derogatory comments about me, because upon her return from maternity leave during the Fall of 2015, she complained to the team that her supervisor, Arthur Lavitt asked her on 2 separate occasions 'If sex was better after pregnancy' which she found offensive." | 24 | Sustained, F.R.E. 403 and 802 |
| "This was a part of the corporate culture of sexually offensive comments." | 24 | Sustained, F.R.E. 403 and 701 |
| "I found this to be disparate treatment of similarly situated employees" | 25 | Sustained, F.R.E. 403 and 701 |
| All text from "Count One: Race Discrimination" until "Exhibits" | 25–33 | Sustained, F.R.E. 403 and 701 |
| All text from "Exhibits" through the remainder of the document | 33–37 | Sustained, F.R.E. 401, 403, 802, and 1002 |

SO ORDERED.

Dated: November 27, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge