```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
AFTERN SANDERSON,                                                 :
                                                                  :
                                            Plaintiff,     :       1:19-cv-8423-GHW
                                                                  :
                    -v –                                      :       MEMORANDUM OPINION &
                                                                  :       ORDER
LEG APPAREL LLC, *et al.*,                                        :
                                         Defendants.   :
                                                                  :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    BACKGROUND

On December 4, 2023, Plaintiff prevailed at trial on retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL"). The Court now determines whether and in what amount Plaintiff is entitled to economic damages, namely front pay and back pay, due to his unlawful termination.

The Court held a jury trial beginning on November 28, 2023 on Plaintiff's claims for retaliation under Title VII, the NYSHRL, and the New York City Human Rights Law (the "NYCHRL"), and his claims for discrimination under the NYCHRL. The jury returned a verdict for Plaintiff on his retaliation claims under Title VII and the NYSHRL against Defendants Leg Apparel LLC ("Leg Apparel") and Amiee Lynn, Inc. ("Amiee Lynn") and awarded Plaintiff $25,000 in compensatory damages against each of the two Defendants. Dkt. No. 376.

At trial, Plaintiff testified that he was hired at Leg Apparel as a Senior Planner in early 2015. Dkt. No. 379 ("November 29, 2023 Trial Tr.") 215:13–15, 298:11–12. The position paid $92,500 per year. *Id.* 298:16–18. Plaintiff was fired from Leg Apparel on September 13, 2017. *Id.* 299:9–10. He testified that two weeks after his termination, he "stopped going out because [he] was too busy with the case and looking for a job." *Id.* 283:15–17. Four months after his termination, Plaintiff was

hired by Betesh, also as a Senior Planner.  *See* PX-I1.  His offer letter from Betesh anticipated a start date of December 18, 2017.  *Id.*  He earned $92,500 at Betesh and received benefits "comparable" to those he received at Leg Apparel.  November 29, 2023 Trial Tr. 298:13–24.  His job responsibilities at Betesh were also similar, though not identical.  *Id.* 300:1–17.  Plaintiff testified that he was "overqualified" and "overpaid" for his position at Betesh.  *Id.* 301:2–8.  Six months after he was hired at Betesh, Plaintiff was terminated for poor performance.  *Id.* 300:15–19.  Plaintiff then got a job at Orly, where he earned $40 an hour.  *Id.* 300:20–25, 301:16–17.  He left Orly voluntarily after 11 months.  *Id.* 301:9–15.

On January 10, 2024, Defendants submitted a memorandum on the issue of economic damages.  Dkt. No. 394 ("Defendants' Brief").  On January 16, 2024, Plaintiff submitted a brief styled as a "Request for Economic Damages" wherein he demanded "$32K-ish" in back pay and an unspecified amount of front pay.  Dkt. No. 398.

## II.   DISCUSSION

### A.  Back Pay:  Legal Standard

Title VII provides that if a defendant is found liable of "intentionally engaging in an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate . . . with or without back pay . . . ."  42 U.S.C.S. § 2000e-5.  The NYSHRL also authorizes an award of back pay.  N.Y. Exec. Law §§ 297(4)(c)(ii).  "The same standards used to award front and back pay in Title VII discrimination cases also apply to cases arising under NYSHRL . . . ."  *Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283(PAC)(KNF), 2009 WL 2611950, at *3 (S.D.N.Y. Aug. 18, 2009); *see e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 93 (E.D.N.Y. 2020) (applying same legal standard to assessment of back pay for Title VII and NYSHRL retaliation claims).

"[A] trial court has discretion whether to award backpay."  *Bergerson v. N.Y. State Office of*

*Mental Health*, 652 F.3d 277, 286 (2d Cir. 2011). But "[a]n award of backpay is the rule, not the exception." *Id.* (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 580 (2d Cir. 1989)). "The decision to award backpay is measured against the purposes which inform Title VII, which include removing the stain discrimination leaves on equality in the workplace and making victims of discrimination whole . . . ." *Id.* (cleaned up).

"The ordinary rule of this Circuit is that the back pay award runs from the date of the discriminatory action to the date of judgment, and should include any anticipated raises, step increases, cost of living increases, and other increases necessary to make the plaintiff whole." *EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*, 186 F.3d 110, 124 (2d Cir. 1998). However, "it remains a cardinal, albeit frequently unarticulated assumption, that a back pay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices." *Id.* (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984)). "[I]t is plaintiff's burden to present a non-speculative basis for determining [back pay]." *Tse v. UBS Fin. Servs.*, 568 F. Supp. 2d 274, 308 (S.D.N.Y. 2008) (Lynch, J.) (stating legal standard for proving economic damages) (citing *Bracey v. Bd. of Educ.*, 368 F.3d 108, 119 (2d Cir. 2004) ("If [the plaintiff] wants damages, he must prove them.")).

Additionally, "[a]n employee discharged in violation of Title VII has an obligation to attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998) (quoting *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231 (1982)). "This obligation is not onerous and does not require her to be successful." *Id.* For instance, an unemployed plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position." *Id.* at 695–696.

"[A]n employer seeking to avoid a [back pay] award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate." *Broadnax v. City of New Haven*, 415 F.3d 265, 268

3

(2d Cir. 2005). "This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Id.* (quoting *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997)). However, "[a]n employer 'is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment.'" *Id.* (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998)).

### B. Back Pay: Application

Plaintiff has held two jobs since his termination from Leg Apparel and has experienced several distinct periods of unemployment. The Court must analyze whether Plaintiff is entitled to back pay during each of these time periods and will address each in turn.

### i. Leg Apparel Termination to Betesh Start Date

Plaintiff is entitled to back pay for the period between his September 13, 2017[1] termination from Leg Apparel and his December 18, 2017 hiring at Betesh. Plaintiff provided a "non-speculative" basis for calculating the wages he lost during this time by testifying that he made $92,500 annually at Leg Apparel before his unlawful termination. *Tse*, 568 F. Supp. 2d at 308. In accordance with the "ordinary rule of this Circuit," the Court assumes he would have remained employed at Leg Apparel during this four-month pre-judgment period. *Joint Apprenticeship Comm*, 186 F.3d at 124. Therefore, Plaintiff is entitled to back pay for this period of unemployment, at an annual rate of his Leg Apparel salary of $92,500, for a total of $24,328.77.[2]

Defendants argue that the Court should not award Plaintiff back pay for this period or any

---

[1] Defendants urge the Court to use September 15, 2017 as the start date for this period instead, asserting that it is the "last date of pay by Defendants." Defendants Brief at 6. But Plaintiff testified that he was fired on September 13, 2017, and Defendants do not point to any evidence in the trial record that would suggest Defendants paid him through September 15, 2017. Therefore, the Court uses September 13, 2023 as the start date for this period.

[2] The trial record contains no evidence about the value of Plaintiff's benefits at Leg Apparel or any anticipated pay increases. Therefore, Plaintiff failed to meet his burden of providing a non-speculative basis for such damages with respect this period. *See, e.g.*, *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) (back pay did not include anticipated promotion because claimant failed to produce sufficient evidence); *cf. Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (while a plaintiff need not prove lost profits with "mathematical precision," awards of damages must be "capable of measurement based upon known reliable factors without undue speculation").

4

other because Plaintiff "presented no evidence that he made any reasonable efforts to seek such employment." Defendants' Brief at 5. Surprisingly, they make this argument just sentences after acknowledging "[t]o be clear, it is Defendants' burden to establish that Plaintiff failed to mitigate his damages." *Id.* Defendants are correct that it was their burden to establish at trial that Plaintiff failed to make reasonable efforts to mitigate his damages, and the Court finds they failed to do so for the period between September 13, 2017 and December 18, 2023. In fact, Defendants point to no evidence in the trial record that shows that Plaintiff failed to mitigate his damages during this time.

The only evidence regarding mitigation that Defendants reference is Plaintiff's testimony that he was looking for a new job two weeks after his unlawful termination.[3] There is no evidence that he was not looking for a job during the two weeks after his termination, and there is no evidence that he stopped looking for a job at any point during the months-long period of unemployment that followed. Plaintiff then obtained employment at Betesh, where he held the same job title and earned the same salary and benefits that he had at Leg Apparel. Defendants cannot meet their burden of proof by attacking the sufficiency of Plaintiff's evidence. *Cf. Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 580 (S.D.N.Y. 2010) ("[D]efendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment. Rather, defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment. The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct.") (collecting cases).

Defendants' reliance on *Hine v. Mineta*, 238 F. Supp. 2d 497 (E.D.N.Y. 2002) to support their argument is misplaced. Defendants assert that in *Hine*, the court accepted a jury's advisory verdict

---

[3] Therefore, Defendants own papers contradict their assertion that Plaintiff "presented no evidence" on mitigation. Defendants' Brief at 5.

5

denying back pay because the plaintiff "failed to demonstrate" efforts to find other employment. Defendants' Brief at 5. But the plaintiff in *Hine* argued that she was unable to seek other employment due to emotional distress. *Hine*, 238 F. Supp. 2d at 501. Therefore, unlike in this case, the record in *Hine* contained unrebutted evidence that the plaintiff did *not* search for employment after her termination. Here, the opposite is true: Plaintiff testified that he searched for employment after he was fired and found an equivalent job just months after his termination. Accordingly, Plaintiff is entitled to back pay for this period.

### ii. Betesh Start Date to Orly Start Date

Because Plaintiff earned the same salary and benefits at Betesh as he did at Leg Apparel, he is not entitled to back pay for the six-month period of his employment. *See Bergerson*, 652 F.3d at 286 (holding that a central purpose of back is "making victims of discrimination whole"); *Townsend v. Exch. Ins. Co.*, 196 F. Supp. 2d 300, 307 (W.D.N.Y. 2002) (no back awarded when plaintiff received the same salary in his subsequent position).

Because it is undisputed that Plaintiff was fired from Betesh for poor performance, he is also not entitled to back pay for the period during which he was unemployed after his termination from Betesh. That he was fired for cause demonstrates a lack of "reasonable diligence" to maintain his employment. *Hawkins*, 163 F.3d at 695; *see, e.g.*, *Rivera v. Baccarat, Inc.*, No. 95 CIV. 9478 MBM JCF, 1997 WL 777887, at *3 (S.D.N.Y. Dec. 15, 1997) ("[A] plaintiff who is terminated for cause from a subsequent equivalent job has not met the mitigation requirement); *Edwards v. Albert Einstein Med. Ctr.*, 533 F. Supp. 3d 215, 226 (E.D. Pa. 2021) (collecting cases). "[I]nvoluntary terminations from subsequent employment will toll back pay where the reasons for the termination are unrebutted and justified on the record." *Edwards*, 533 F. Supp. 3d at 226.; *cf. Hawkins*, 163 F.3d at 695 (holding that "a claimant who voluntarily resigned from comparable employment for personal reasons would not have adequately mitigated damages" and would toll back pay). The record also does not

6

demonstrate that Plaintiff's poor performance was due to unreasonable working conditions or any other mitigating factors. In fact, Plaintiff testified that he was "overqualified" and "overpaid" for the job. Trial Tr. 301:2–8. *Compare Strauss v. Microsoft Corp.*, No. 91 Civ. 5928, 1995 WL 326492, at *5–6 (S.D.N.Y. June 1, 1995) (declining to toll back pay at summary judgment because of disputed fact of whether the plaintiff was fired from her subsequent employment due to complications from her disability rather than a lack of diligence) *with Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269 (4th Cir. 1985) (tolling back pay because the claimant was fired from his subsequent employment due to repeated mistakes on the job). Therefore, Plaintiff's firing from Betesh tolled his entitlement to back pay.[4]

### iii. During Orly Employment

Plaintiff's for-cause firing from Betesh tolled back pay, but he later exercised reasonable diligence to mitigate his damages by finding a job at Orly with a similar rate of pay. *See Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 382 (1st Cir. 2004) (holding that "back pay is not permanently terminated when an employee is fired for misconduct or voluntarily quits interim employment" and explaining how "[t]his view comports with the purpose of the back pay remedy as articulated in" *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)); *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992) ("[T]he district court properly tolled the back pay award during the period between each voluntary quit and her next full-time permanent position.").

However, Plaintiff nevertheless is not entitled to back pay for this period because he failed to provide a "non-speculative" basis for calculating damages. *Tse*, 568 F. Supp. 2d at 308. While Plaintiff testified that he made $40 per hour at Orly and that he worked there for 11 months, he offered no evidence about the number of hours he worked each week, or even whether his position

---

[4] Moreover, there is no evidence in the trial record about the length of time between Plaintiff's firing from Betesh and his hiring at Orly. Therefore, even setting aside Plaintiff's for-cause firing, the Court cannot award back pay for this period because any calculation would be unduly speculative.

7

was full- or part-time.  Therefore, the Court will not award Plaintiff back pay for this 11-month period.[5]

### iv. After Quitting Orly

Plaintiff is also not entitled to back pay for any period after he resigned from Orly. Ordinarily, a voluntary resignation demonstrates that the claimant did not act with reasonable diligence to mitigate his damages.  *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 696 (2d Cir. 1998). Therefore, like Plaintiff's for-cause firing, his admission at trial that he voluntarily left Orly tolls the back pay period.  *See Id.*

A voluntary resignation "does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment" but Plaintiff presented no such justifications.  *Id.*  When asked during cross-examination why he was no longer working for Orly, he testified only that he "walked out."  Trial Tr. 301:14–15.  Therefore, Plaintiff is not entitled to back pay for any period following his resignation. *See Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010) (distinguishing a case where the plaintiff diligently sought to mitigate his damages from cases in which claimants "quit jobs for no apparent reason").

### C. Front Pay:  Legal Standard and Application

Plaintiff is also not entitled to front pay.  "Front pay may be awarded pursuant to [Title VII], which provides a court with authority to 'order such affirmative action as may be appropriate,' including but not limited to 'reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."  *Bergerson*, 652 F.3d at 287 (quoting 42 U.S.C.S. § 2000e-5); *see also Antoine*, 489 F. Supp. 3d at 95 ("The court has the discretion to award

---

[5] If the Court were to assume that Plaintiff worked at Orly full-time—which is not established by the trial record—and award damages based on the difference between 11 months of full-time earnings at Orly and 11 months of Plaintiff's previous salary at Leg Apparel, that award would total approximately $8,525.  That this small amount has a relatively minor impact on whether Plaintiff is made "whole" by his total economic damages award factors into the Court's decision not to make unsupported assumptions about Plaintiff's hours.  *Joint Apprenticeship Comm*, 186 F.3d at 124.

8

front wages to a prevailing plaintiff under Title VII, the NYSHRL, and the NYCHRL."). "Front pay is awarded at the discretion of a district court where reinstatement is inappropriate and the plaintiff has been unable to find another job." *Bergerson*, 652 F.3d at 286. "The purpose of front pay is to 'mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'" *Id.* (quoting *Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 125–26 (2d Cir. 1996)). In contrast to back pay, which is awarded for lost compensation before the date of judgment, front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012) (quoting *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)).

A plaintiff seeking front pay has the same burden to prove a non-speculative basis on which to calculate damages as a plaintiff seeking back pay. *See Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) ("[A]n award of front pay cannot be unduly speculative."). He also has the same duty to mitigate. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998) (holding that a plaintiff's "failure to mitigate deprives him of any entitlement to receive an award for front pay"). And as with back pay, the defendant bears the burden of proving the plaintiff's failure to mitigate. *Id.* at 54 (stating same mitigation standard with respect to front pay as back pay).

Here, the Court cannot "reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Bergerson*, 652 F.3d at 286. Any award of front pay would therefore be "unduly speculative." *Greenway*, 143 F.3d at 55. Plaintiff presented no evidence at trial about his prospects of finding employment post-judgment. *See, e.g., Press v. Concord Mortg. Corp.*, No. 08 CIV. 09497 KTD, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010) (finding that an award of front pay would be "unduly speculative" because the claimant did "not adequately explain why he would be unable to find work" in his industry). The only evidence in the trial record that

would aid the Court in making a prediction about Plaintiff's future prospects suggests that Plaintiff has a reasonable chance of obtaining comparable employment in the future: after his unlawful termination from Leg Apparel, he obtained a comparable job at Betesh just four months later. *See also Bergerson*, 652 F.3d at 286 ("Front pay is awarded at the discretion of a district court where reinstatement is inappropriate and *the plaintiff has been unable to find another job*.") (emphasis added).

Moreover, Plaintiff's failure to mitigate his damages deprives him of any entitlement to front pay. *Greenway*, 143 F.3d at 55. As described, Plaintiff's voluntary resignation from Orly represents a failure to mitigate that tolled his economic damages, and there is no evidence that he sought or accepted another job. *See, e.g.*, *Delight Wholesale Co.*, 973 F.2d at 670 (tolling economic damages when plaintiff voluntarily resigned from suitable employment and un-tolling when she began her next full-time permanent position). Therefore, Plaintiff is not entitled to an award of front pay.

### D. Prejudgment Interest

"[T]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009) (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375 (2d Cir. 2000)). "[J]udgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate." *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010). This rate is "most commonly based on the average rate of return on one-year Treasury bills ("T-bills") for the relevant time period." *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007) (quoting *Kuper v. Empire Blue Cross and Blue Shield*, No. 99 cv 1190, 2003 WL 23350111, at *3 (S.D.N.Y. Dec.18, 2003) (collecting cases)) *aff'd*, 629 F.3d 276 (2d Cir. 2010). When calculating prejudgment interest on economic damages, courts in the Second Circuit have used the midpoint of the economic damages period as the starting date and compounded interest annually. *See, e.g.*, *Manzo v. Sovereign Motor Cars,*

*Ltd.*, No. 08-CV-1229 JG SMG, 2010 WL 1930237, at *12 (E.D.N.Y. May 11, 2010), *aff'd*, 419 F. App'x 102 (2d Cir. 2011) (summary order); *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15CIV6469PKCVMS, 2018 WL 5456654, at *19 (E.D.N.Y. Sept. 8, 2018) ("Where, as here, damages were incurred at various times, courts typically use the midpoint of the accrual of damages method to calculate interest.") (collecting cases) (internal quotations omitted).

Therefore, the Court will award Plaintiff prejudgment interest on his back pay award beginning on October 31, 2017—the midpoint and September 13, 2017 and December 18, 2017—and ending on the date of judgment, compounding annually. The average annual one-year T-bill return rate during this period was 2.18%.

The Court finds that Leg Apparel and Amiee Lynn should be held jointly and severally liable for this amount because the jury found each of them liable for retaliation. That retaliation caused a unitary compensable injury—his termination.

### III.   CONCLUSION

The Court awards Plaintiff economic damages in the amount of $24,328.77 against Leg Apparel and Amiee Lynn jointly. As discussed, Plaintiff is entitled to prejudgment interest on this award, pursuant to the methodology discussed above. In addition, the jury awarded Plaintiff $25,000 in compensatory damages against each of Leg Apparel and Amiee Lynn.[6]

The Clerk of Court is directed to enter judgment against Defendant Leg Apparel as follows:

---

[6] The verdict form establishes that the jury awarded Plaintiff $25,000 against each Defendant. On the verdict form, the jury indicated that Plaintiff was entitled to $25,000 in compensatory damages from Leg Apparel and $25,000 in compensatory damages from Amiee Lynn. Dkt. No. 376. When charging the jury, the Court instructed the jury that they "should not award compensatory damages more than once for the same injury." Dkt. No. 383 ("December 1, 2023 Trial Tr.") 810:2–3. The Court then instructed the jury that if they found more than one defendant liable for the same injury, they could find that those defendants acted jointly. *Id.* 810:22–811:1. The Court further instructed the jury that if they found that the defendants acted jointly, they could treat those defendants jointly for the purpose of damages. *Id.* 811:3–6. The instructions reflected that those findings were optional. ("*[I]f* you find that the defendants who you find to be liable acted jointly, then you *may* treat them jointly for the purposes of deciding damages.") (emphasis added). On the verdict form, the jury awarded separate amounts against each Defendant without any indication that the two Defendants were jointly and severally liable for a single $25,000 award. Dkt. No. 376. Therefore, the verdict form establishes that the jury awarded $25,000 against each of Leg Apparel and Amiee Lynn, for a total of $50,000.

- $27,884.24 ($24,328.77 in economic damages plus $3,555.47 in prejudgment interest), plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a) until Leg Apparel complies with the judgment. Leg Apparel and Amiee Lynn are jointly and severally liable for this amount;

- $25,000, plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a) until Leg Apparel complies with the judgment.

The Clerk of Court is directed to enter judgment against Defendant Amiee Lynn as follows:

- $27,884.24 ($24,328.77 in economic damages plus $3,555.47 in prejudgment interest), plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a) until Amiee Lynn complies with the judgment. Amiee Lynn and Leg Apparel are jointly and severally liable for this amount;

- $25,000, plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a) until Amiee Lynn complies with the judgment.

The Clerk of Court is also directed to close this case.

    SO ORDERED.

Dated: March 1, 2024
       New York, New York

_____
GREGORY H. WOODS
United States District Judge