UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------ X
                                          :
AFTERN SANDERSON,                         :
                                          :
                         Plaintiff,       :
                                          :
           -v —                           :
                                          :
LEG APPAREL LLC, et al.,                  :
                         Defendants.      :
                                          :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/2025

1:19-cv-8423-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

Aftern Sanderson sued his employers for discrimination and retaliation.  After several years of litigation, the case was tried to a jury.  Mr. Sanderson tried the case *pro se*; Defendants were represented by a team of lawyers from a global law firm.  Notwithstanding, Mr. Sanderson prevailed in part—the jury found for Mr. Sanderson for his claim of retaliation, while finding that his claim of discrimination lacked merit.  Mr. Sanderson appealed the judgment, asserting an array of purported errors in the Court's evidentiary rulings at trial, and misconduct by the defendants.  The Second Circuit Court of Appeals denied his appeal.

Now, Mr. Sanderson seeks to relitigate the alleged mistakes and misconduct through the vehicle of Federal Rule of Civil Procedure 60(b).  Because nearly all of Mr. Sanderson's arguments fall within the scope of Rule 60(b)(1) and (3) and he failed to file his motion within one year, they are time-barred.  And because the challenges of trying a case *pro se* against parties who are represented by counsel do not constitute "extraordinary circumstances"—but should, rather, be expected—Mr. Sanderson's motion does not justify vacatur of the judgment under Federal Rule of Civil Procedure 60(b)(6).  Accordingly, Plaintiff's motion is denied in full.

# I.    BACKGROUND

## A.    Procedural History

The Court assumes the reader's familiarity with the underlying facts of this case.  Mr. Sanderson initially filed this action on September 10, 2019.  Dkt. No. 2.  He chose to litigate the case *pro se*.  His case survived the defendants' opening rounds of motions to dismiss.  *See* Dkt. Nos. 79; 126.  The Court did not stay discovery while the defendants pursued their first round of motions to dismiss.  Dkt. No. 39.  The parties were afforded an extended period to complete discovery—from the date of the initial pretrial conference on December 6, 2019 through September 30, 2021.  *See* Dkt. Nos. 39, 152.  During the discovery process, the Court issued an order requesting that pro bono counsel volunteer to assist Mr. Sanderson.  Limited purpose pro bono counsel appeared on his behalf.  Dkt. Nos. 80, 90.

The Court later reopened expert discovery because Mr. Sanderson had failed to provide timely expert disclosures, and the Court extended the expert discovery deadlines multiple times to permit the parties to complete expert discovery.  Dkt. Nos. 192, 203, 226, 243, 249, 275.  During the course of the discovery period in the case, the Court held many conferences with the parties to resolve discovery-related disputes.

In March 2023, the Court granted in part and denied in part the defendants' motion for summary judgment.  Dkt. No. 280.  Shortly thereafter, the Court scheduled the case for trial.  Dkt. No. 284.  The Court also directed the parties to discuss a potential settlement with the assistance of the assigned magistrate judge.  Dkt. No. 285.  In connection with that initiative, the court found volunteer pro bono counsel from Sullivan & Cromwell who appeared to represent Mr. Sanderson in the mediation process.  Dkt. Nos. 288, 289.  Mr. Sanderson declined the opportunity to hold a settlement conference and the free services of Sullivan & Cromwell as his counsel.  Dkt. No. 312.

The parties and the Court engaged in substantial work in the build-up to the scheduled jury trial. Given that Mr. Sanderson was acting as his own lawyer, yet expected to testify at trial, that work included discussions of the means by which Mr. Sanderson would testify. The Court granted Mr. Sanderson's request to provide a narrative description of the facts, rather than deputizing a friend to ask him pre-scripted questions. To facilitate that process, among other things, the Court issued an order responding to the defendants' objections to Mr. Sanderson's anticipated testimony, so that he could consider the nature of the objections and the Court's view with respect to them before he testified. Dkt. No. 369.

The trial was relatively brief—spanning just five days. During the course of the trial, the jury heard both parties' evidence regarding Mr. Sanderson's remaining claims: for discrimination under the New York City Human Rights Law (the "NYCHRL") and for retaliation under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the NYCHRL. As at any trial, the Court made rulings throughout regarding the admissibility of evidence and the propriety of questions asked. At the end of trial, the jury returned a split verdict. It found that Mr. Sanderson had not proven his discrimination claim. But the jury found that Mr. Sanderson had successfully proven his retaliation claims against the two corporate defendants. The jury ordered that each pay $25,000 in compensatory damages to Mr. Sanderson. Dkt. No. 385 at 849:4-852:16.

After trial, the Court was required to determine whether Mr. Sanderson was entitled to backpay. The Court issued an opinion on March 1, 2024 in which it determined that amount based on the evidence presented at trial. Dkt. No. 401 at 11 ("The Court awards Plaintiff economic damages in the amount of $24,328.77 against Leg Apparel and Amiee Lynn jointly. As discussed, Plaintiff is entitled to prejudgment interest on this award, pursuant to the methodology discussed above. In addition, the jury awarded Plaintiff $25,000 in compensatory damages against each of Leg

Apparel and Amiee Lynn.").  The Court ordered the entry of judgment consistent with that conclusion.  Judgment was entered on March 1, 2024.  Dkt. No. 402.

At the initial pretrial conference for the case, the Court discussed with Mr. Sanderson the challenges of litigating a federal case *pro se*.  *See, e.g.*, Dkt. No. 183 at 2:10-23.[1]  As indicated above, at several points throughout the litigation, the Court pointed Mr. Sanderson to the legal clinic in the Southern District of New York that offers legal assistance to *pro se* litigants.  The Court also offered to appoint or appointed pro bono counsel to represent Mr. Sanderson for both limited and full purposes.  *See, e.g.*, Dkt. Nos. 9, 38, 80, 90, 288, 289, 311.  As noted above, Mr. Sanderson ultimately declined the assistance of pro bono counsel.  Dkt. No. 312.

Mr. Sanderson filed a notice of appeal on December 7, 2023.  Dkt. No. 378.  On May 24, 2024, Mr. Sanderson filed a statement confirming that he "has acquired the Trial Transcripts from Pacer."  App. Dkt. No. 21.  Mr. Sanderson filed his appellate brief just over three months later, on August 26, 2024.  App. Dkt. No. 24 ("App. Mem.").  The brief raised an array of issues, including (1) the Court's decision not to admit (a) "expert medical statements as evidence . . . ., *id.* at 25, and (b) the "NYSDHR 'Probable Cause' finding," *id.* at 26; (2) the Court's restriction of "Plaintiff's testimony concerning Emotional Distress," *id.* at 9, (3) an alleged "Ex-Parte" conversation between the Court and one of the defendant's lawyers, *id.*; (4) the Court's control over his direct testimony, *id.*; (5) excessive objections to Plaintiff's questions, *id.* at 28; and (6) the "Judge skipped over Plaintiff when asking a question to the parties 2 times;" *id.* at 30.  Defendants filed their opposition brief on November 25, 2024.  App. Dkt. No. 29.  It was twenty pages long.

---

[1] "THE COURT:  Mr. Sanderson, just a few comments about proceeding *pro se* in this court.  First, let me say I recognize it can be difficult to proceed pro se in a litigation such as this.  To put it very simply, there's a lot of law that applies in federal court to any action, and it can be difficult for somebody who does not have experience litigating here to navigate those rules.  It's difficult because, notwithstanding that factor, you're still bound by the rules of the court, my orders, and the governing law.  So I recognize those issues.  I'm going to ask my deputy to hand you a reference to the pro se clinic, which is hosted by the court.  It's not part of the court.  MR. SANDERSON:  Yes.  I've been working with the pro se clinic."  Dkt. No. 183 at 2:10-23.

Mr. Sanderson filed multiple separate documents in reply.  On March 31, 2025, just over four months after the opposition brief, he filed a motion to file a late reply brief, which contained substantive arguments in response to the opposition.  App. Dkt. No. 40.  In that document, Mr. Sanderson advanced additional arguments in support of the contentions raised in his initial brief. He also raised several new issues.  First, he argued that he understood that the "Summary Judgement was disturbed in the Final Judgment."  *Id* at 4.  Second, he argued that he understood that after trial ended, the Court had stated that the excluded evidence would be "included in the Final Judgment, somehow."  *Id.* at 4, 12.  Mr. Sanderson claims that he heard the statement but that it was "redacted" from the trial transcript.  *Id.* at 12.  Mr. Sanderson also took issue with the verdict sheet—asking "Why are ALL the counts on the Jury Ballot form?"  *Id.* at 4.  Mr. Sanderson also contended that the defendants' counsel deployed a strategy at trial designed to confuse him.  *Id.* at 20.

Mr. Sanderson filed a supplement to his reply brief on April 7, 2025.  App. Dkt. No. 43.  In it, he explained his reasons why he "declined Pro Bono legal services from individuals and agencies offered by the Court . . . ."  *Id.* at 2.  Mr. Sanderson then explained his grievances against several lawyers and an intern from the New York Legal Assistance Group clinic for *pro se* litigants.  *Id.* at 2-5.  He also detailed his concerns about his representation by volunteer lawyers from Sullivan & Cromwell, which, he asserted was "'**planted**' to intentionally diminish the value of the case and downgrade the damages."  *Id.* at 6 (emphasis in original).  Therefore, Mr. Sanderson explained, he "declined the **<u>dubious and suspicious</u>** of the Pro Bono legal services of S&C."  *Id.* (emphasis in original).  Mr. Sanderson complained also of the work done by Magistrate Judge Cave in mediation—among other things, Mr. Sanderson was "shocked and appalled" by the mediation agreement, understanding it to be biased against him.  *Id.*  Finally, Mr. Sanderson complained that the Court's audio visual staff did not provide him equal treatment as the defendants during his first tutorial regarding the courtroom technology (he later received a one on one tutorial).  *Id.* at 7, Ex. A.

Mr. Sanderson filed another letter with the Second Circuit on May 5, 2025, in which he presented several additional motions that he stated he would serve.  App. Dkt. No. 58.  That letter asked the Court of Appeals to reconsider the exclusion of "Glassdoor" reviews that he wished to offer at trial.  *Id.* at 2.  The letter also restated Mr. Sanderson's arguments regarding the admissibility of medical evidence and a probable cause determination by the New York State Division of Human Rights (the "NYSDHR").  *Id.* at 3.  The letter also requested "reconsideration of Plaintiff's Race claims"—referring to the Court's summary judgment opinion.  *Id.* at 4.  Meanwhile, Mr. Sanderson sought the recusal of one of the defendant's lawyers on the basis of a purported *ex parte* communication Mr. Sanderson believed to have overheard.  App. Dkt. Nos. 53, 57.  Defense counsel swore that no such conversation happened.  App. Dkt. No. 62.

On May 15, 2025, after the Second Circuit heard oral arguments, Mr. Sanderson filed another motion requesting leave from the Second Circuit to submit supplemental argument regarding the verdict form issue he had previously raised.  App. Dkt. No. 63.1 at 2.  Attached to that document was an exhibit that Mr. Sanderson described as a list of 28 other cases that cited this case. Based on that list, Mr. Sanderson argued:  "These were valid citations from Plaintiff's case used in other similar cases, Yet Plaintiff only won 2 counts in the Court's Final Judgment.  This is a glaring disparity."  *Id.* at 2, Ex. B.  And in a May 28, 2025 response to an affidavit filed by the defendants' counsel, Mr. Sanderson reported a series of "other suspicious Pre-Trial actions" by the defendants, which he recounted.  App. Dkt. No. 67.

On June 16, 2025, Mr. Sanderson filed a lengthy submission with the Court of Appeals. App. Dkt. No. 68.  In it, Mr. Sanderson asked the Second Circuit to expedite its decision regarding his appeal.  *Id.* at 2-3.  To support that request, Mr. Sanderson asserted that counsel for the defendants had engaged in a litany of bad acts, including "submitting false evidence," "knowledge of their client's Lies," "legal procedural obfuscation," "delaying tactics," and "withholding Discovery

production." *Id.* at 4. The document included a "notice of rejection" of defendants' Rule 35 exam. *Id.* at 5. And Mr. Sanderson made a request for clarification of the amount of his judgment, as he asked the court to "investigate the vast discrepancies in the Judgement Dollars awarded to Appellant." *Id.* at 6. He stated: "This is a clear-cut situation where Black litigants are often ignored, discriminated against and wrongfully treated in the US Justice system." *Id.*

Mr. Sanderson filed another supplemental brief asking the Second Circuit to "REJECT Appellees Rule 35 Medical Mental Health report included in the record without any purpose." App. Dkt. No. 69 at 2. Mr. Sanderson contended that the report improperly included information about his HIV status to shame him. *Id.* at 4. He asserted that it constituted intentional infliction of emotional distress by the "*dimwitted and dullard*" lawyers for the defendants. *Id.* (emphasis in original). While Mr. Sanderson argued that his privacy interests were injured as a result of the report, "Appellant opposed the 'SEALING' of Appellees['] expert Medical Mental Health Exam . . . . The report should not have been 'SEALED' as the report was ordered by the Court, and Appellant was not opposed to having his Medical Mental Health Information included in the report, nor opposed to the information being made public." *Id.* at 5.

On July 8, 2025, the Second Circuit issued an opinion denying Mr. Sanderson's appeal. *Sanderson v. Leg Apparel LLC*, 2025 WL 1873869 (2d Cir. 2025). In its opinion, the Second Circuit specifically addressed Mr. Sanderson's arguments that he should have been permitted to introduce evidence of his doctors' statements and a report by the NYSDHR. *Id.* at *1. The court also responded to Mr. Sanderson's argument that "the district court abused its discretion by sustaining numerous objections during his cross-examination of witnesses, preventing him from litigating his case effectively." *Id.* at *2. The Circuit held that the Court did not do so: "Despite repeated warnings from the district court, Sanderson's pro se cross-examinations were often interspersed with lengthy soliloquies." *Id.* The Circuit found that the Court had properly sustained the defendants'

objections: "In so doing, the district court did not deprive Sanderson of the chance to cross-examine witnesses—in fact, it often let Sanderson proceed to a question over a valid objection. The district court was therefore well within its discretion in managing Sanderson's cross-examination." *Id.*

The Second Circuit did not respond individually to all of the numerous arguments presented to it in Mr. Sanderson's varied filings. Instead, it concluded its opinion with the following statement: "We have considered Sanderson's remaining arguments and find them to be without merit." *Id.*

### B.    The Rule 60(b) Motion

Mr. Sanderson filed this motion on August 13, 2025. Dkt. No. 429 ("Mem."). His initial memorandum of law was short—just five pages long. Mr. Sanderson asserted that his motion was brought under Federal Rule of Civil Procedure 60(b)(1), (2), (3) and (6). *Id.* In his initial motion, Mr. Sanderson asserted five grounds for relief:

> ***First***, the exclusion of the NYSDHR Probable Cause Determination . . . . ***Second***, the improper exclusion of psychiatric evaluations and treating provider testimony . . . . ***Third***, Defendants' discovery obstruction—including refusal to verify employment and withholding of responsive documents—created an asymmetrical evidentiary landscape . . . . ***Fourth***, the exclusion of habit evidence . . . . ***Finally***, the prolonged delay in adjudicating damages, equitable relief, and unresolved summary judgment motions compounded the prejudice.

Mem. at 3-4.

Defendants filed their opposition to Mr. Sanderson's motion on September 3, 2025. Dkt. No. 432. Defendants asserted several reasons why Mr. Sanderson's motion should be denied. First, they argued that Mr. Sanderson could not bring a motion under Rule 60(b)(1), (2) or (3) because the one year deadline for such a motion had long-since expired. *Id.* at 3. Second, Defendants argued that the issues raised by Mr. Sanderson were an improper attempt to relitigate issues already decided by this Court and the Second Circuit. *Id.* at 4. Finally, Defendants argued that because the issues

presented in the motion had been the subject of Mr. Sanderson's appeal, his motion was barred by the "mandate rule." *Id.*

Mr. Sanderson filed his reply on September 22, 2025. Dkt. No. 433 ("Reply").[2] The reply was substantially more voluminous than Mr. Sanderson's initial motion and raised several issues that had not been presented in it. Mr. Sanderson first responded to the defendants' argument that his motion was untimely to the extent that it was brought under Rule 60(b)(1), (2), or (3). He did not directly contest that argument. Instead, he argued that his motion fell within the scope of Rule 60(b)(6), which only requires that a motion be made in a "reasonable time." Reply at 2. Mr. Sanderson asserted that "extraordinary circumstances" justified his motion under Rule 60(b) because "[t]he November 28, 2023 trial transcript was not docketed until December 16, 2024 . . . . In addition, the docket reflects a fractured and contradictory record of damages across entries 401, 402, 405, 422, and 424." *Id.* He also argued that there was no "single, coherent final judgment"—after listing five documents, only one of which was called a judgment. *Id.* at 3.

Mr. Sanderson argued that the mandate rule did not bar his motion because not all of the issues that he had raised were "actually decided" in the appeal. *Id.* He cited a number of issues that he believed had not been substantively addressed by the Second Circuit. *Id.* at 4. Mr. Sanderson argued again that some of his evidence had been excluded improperly and that the Court's evidentiary rulings were not harmless error. *Id.* at 5. Mr. Sanderson raised a new argument not expressed directly in his original motion—namely that the "cumulative effect of evidentiary exclusions, transcript delays, and sustained objections created structural prejudice . . . ." *Id.* at 6-7.

---

[2] The arguments that Mr. Sanderson raised for the first time in his reply are waived. "Courts have repeatedly held that arguments raised for the first time in reply briefs are waived, and courts have routinely applied this rule to *pro se* litigants." *Farmer v. United States*, 2017 WL 3448014, at *3 (S.D.N.Y. 2017) (Nathan, J.). While the Court evaluates those arguments nonetheless, the waiver doctrine is an adequate independent basis to reject the arguments presented by Mr. Sanderson in his reply.

Mr. Sanderson's reply brief also included a number of attacks on the Second Circuit's opinion and process on appeal.  He argued that the effect of the defendants' objections was "to make the transcript appear incoherent, which the Second Circuit later mischaracterized as 'argumentative soliloquy.'"  *Id.* at 6.  He critiqued the Second Circuit's opinion as "dismissive shorthand," and argued that some of the language used by the Circuit in its opinion was "logically incoherent and factually inaccurate."  *Id.* at 7.  Mr. Sanderson also argued that he had been denied "a meaningful opportunity to rebut at oral argument."  *Id.* at 8.  Referring to the appellate court proceedings in this matter, Mr. Sanderson argued that "[r]elief under Rule 60(b) is necessary to correct this miscarriage of justice."  *Id.* at 9.

Mr. Sanderson's reply argued for the first time that the judgment should be vacated under Rule 60(b)(3) because the "record in this case demonstrates not only fraud and misconduct, but also abuse of the judicial process . . . ."  *Id.*  As support for his contention, Mr. Sanderson pointed to asserted inconsistencies in affidavits presented by the defendants.  He argued too that the defendants "engaged in procedural misconduct."  He also pointed to, among other things, the large number of objections that they interposed at trial.  *Id.* at 9-10.  "The judgment against Plaintiff was not the product of a fair adversarial contest but of false affidavits, discovery obstruction, and systemic trial disruption.  Relief is therefore required to vacate the judgment and preserve the integrity of the federal judiciary."  *Id.* at 10.

Mr. Sanderson again argued that the defendants made excessive objections, making it difficult for him to present his evidence.  *Id.* at 10-11.  He argued that the Court sustained a disproportionate number of the objections—supporting his argument with a numerical count of sustained objections.  *Id.* at 10-14.  Mr. Sanderson's reply focused on evidentiary rulings at trial that were not raised in his initial brief, including concerns regarding limiting instructions with respect to certain aspects of Plaintiff's testimony and, again, the exclusion of the NYSDHR report.  *Id.* at 15-

16. Mr. Sanderson also critiqued allegedly inconsistent statements by one witness and an asserted limitation on Mr. Sanderson's ability to impeach the witness at trial. *Id.* at 19-20.

Mr. Sanderson's reply also argued that there was a due process violation because he was not able to purchase daily trial transcripts which were purchased by the defendants. *Id.* at 16. And his reply brief contained an extended argument that the "court-facilitated mediation before Magistrate Cave did not cure structural unfairness," and that "court-affiliated pro bono services and court-ordered mediation magnified structural unfairness." *Id.* at 16, 17 (initial capitalization omitted). As in his submissions to the Second Circuit, Mr. Sanderson took issue with the quality of support provided by lawyers from the New York Legal Assistance Group, his pro bono counsel, and took issue with Magistrate Judge Cave's attempt to resolve the case "despite Plaintiff's repeated refusals." *Id.* at 17-18.

Mr. Sanderson ended his reply with an argument that his perceived imbalance in the effective presentation of his case was the result of racial prejudice. Mr. Sanderson argued that "he encountered the same dismissive treatment that has historically marked the litigation of Black claimants: probative evidence excluded, testimony cut off, impeachment silenced, and appellate review reduced to caricature." *Id.* at 23. Mr. Sanderson argued that his case was a "modern reflection" of cases such as *Plessy v. Ferguson* and the trial of the Scottsboro Boys. *Id.* at 24-25. "Here, the boundaries were enforced not by chains or covenants, but by evidentiary exclusions, procedural asymmetries, and appellate shorthand." *Id.* at 25.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." Fed. R. Civ. P. 60(b). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence,

surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  "[A] 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 533–34 (2022).

Rule 60(b)(2) permits relief on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).  To obtain relief under this rule, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (quotation omitted).

Rule 60(b)(3) permits such relief on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  To obtain relief under this rule, "[t]he moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other misconduct." *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003).  "In addition, the moving party must show that this conduct prevented [the movant] from fully and fairly presenting his case." *Id.* (internal quotation omitted).

"Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief'" and is only available "when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp*, 596 U.S. at 533.  "Even then, 'extraordinary circumstances' must justify reopening" a case. *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  What constitutes "a reasonable time . . . is to be determined

based on 'the particular circumstances of the case,' taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).

"Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted)). As such, when "a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Id.* (quoting *Stevens*, 676 F.3d at 67); *see also id.* (explaining that this is a "threshold issue" because "the two provisions are subject to different filing limitations" under Rule 60(c)). The same is true for Rules 60(b)(2) and (3). Where a motion is premised on a grounds fairly classified as falling within the scope of those rules, relief under Rule 60(b)(6) is foreclosed. *See Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2d Cir. 1989) ("The court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable.").

"A denial of a motion to vacate a judgment under Rule 60(b) is reviewed for abuse of discretion . . . ." *Mandala*, 88 F.4th at 359 (internal quotation marks and citations omitted); *see also Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 ("[T]he decision whether to grant such relief is addressed to the sound discretion of the district court."). A district court abuses its discretion if its Rule 60(b) "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[3] *Mandala*, 88 F.4th at 359 (internal quotation marks and citation omitted). "In

---

[3] In 2022, the Supreme Court clarified that litigants may seek relief from judgment based on a purported error of law by the district court under Rule 60(b)(1). *See Kemp*, 596 U.S. at 533–34.

exercising that discretion [in ruling on a Rule 60(b) motion], courts aim to 'strike[ ] a balance between serving the ends of justice and preserving the finality of judgments.'" *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).  In short, Rule 60(b) motions "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted).

"The burden is on the moving party to demonstrate that it is entitled to relief, and courts generally . . . require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation marks and citations omitted); *accord Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021).  "[B]ecause vacatur under Rule 60(b) is an equitable remedy, courts may deny Rule 60(b) relief if the moving party is found to have acted inequitably." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182.

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed pro se is 'to be liberally construed' . . . " (citation omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013).

## III.    DISCUSSION

### A.    Nearly All of The Issues Raised In Plaintiff's Motion Are Governed by Rule 60(b)(1) or (3) and Are Therefore Time-Barred

Nearly all of the issues raised by Plaintiff's motion and extended post-motion reply are governed by either Rule 60(b)(1) or 60(b)(3).  All but one of the issues identified in Mr. Sanderson's initial motion fall within the scope of Rule 60(b)(1) because he challenges what he understands to be

mistakes by the Court.  In his initial motion, Mr. Sanderson identified purported mistakes by the Court in its evidentiary rulings and what he understood to be a delay in determining the amount of the judgment and "unresolved summary judgment motions."  Mem. at 3-4.  All of these arguments challenge alleged mistakes by the Court in its rulings during the course of the trial and in the entry of judgment.  The majority of the arguments that Mr. Sanderson advances in his reply brief are also the result of alleged mistakes by the Court with respect to evidentiary rulings and the management of direct and cross examination at trial.

Mr. Sanderson also advances several arguments that are fairly classified as falling within the scope of Rule 60(b)(3)—alleged fraud or other misconduct by the defendants.  In his initial motion, Mr. Sanderson argued that the defendants engaged in "discovery obstruction—including refusal to verify employment and withholding of responsive documents . . . ."  Mem. at 3.  In his reply, Mr. Sanderson added another allegation that the defendants presented affidavits that contained inconsistences.  Reply at 9-10.

Plaintiff's motion is denied as untimely to the extent it seeks relief under Rule 60(b)(1), (2) or (3).  "A motion under Rule 60(b) must be made within a reasonable time . . . ."  Fed. R. Civ. P. 60(c)(1).  The time to file a motion under Rule 60(b)(1), (2), or (3) is specifically limited to "no more than a year after the entry of the judgment or order or the date of the proceeding."  *Id.*  "The one-year limitation period for Rule 60(b) motions is absolute."  *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006) (internal quotation marks omitted).  The one-year limit is also a ceiling, and "a Rule 60(b)(1) motion may be rejected as untimely if not made within a reasonable time even though the one-year period has not expired." *Suazo v. Bryant Props. 769 LLC*, No. 21 Civ. 2996 (KPF), 2024 WL 967226, at *4 (S.D.N.Y. Mar. 5, 2024) (internal quotation marks and citation omitted); *accord* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2866 (3d ed.) ("The one-year period represents an extreme limit, and the motion may be

rejected as untimely if not made within a 'reasonable time' even though the one-year period has not expired.").

The Court entered judgment on March 1, 2024. Dkt. No. 402. Therefore, the one-year deadline for Mr. Sanderson to file a motion under Rule 60(b)(1), (2) or (3) was March 1, 2025. Mr. Sanderson filed his motion on August 13, 2025—more than five months after the deadline.

Mr. Sanderson's appeal did not toll the one-year deadline for filing his motion under Rule 60(b)(1), (2) and (3). "Such tolling is unnecessary because a Rule 60(b) motion can be made even though an appeal has been taken and is pending." *King v. First American Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002).

The Court believes that the one-year limitation in Rule 60(c) for motions brought under Rules 60(b)(1), (2) and (3) is best construed as a mandatory claim processing rule—one that is not susceptible to equitable tolling. "Mandatory claim-processing rules 'regulate the timing of motions or claims brought before the court.'" *McIntosh v. United States*, 601 U.S. 330, 337 (2024) (quoting *Dolan v. United States*, 560 U.S. 605, 610 (2010)). Filing deadlines are the "quintessential claim-processing rules." *Id.* (internal quotations and citation omitted). "If the affected party alerts the court to the deadline and invokes its protection, the relevant action cannot be taken after the deadline has passed." *Id.* "Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility." *Nutraceutical Corporation v. Lambert*, 586 U.S. 188, 192 (2019).

The text of Rule 60(c) supports the conclusion that its one-year time limit for a party to bring a motion under Rule 60(b) for the reasons identified in subsections (1), (2) and (3) is mandatory. The rule states that such a motion "must" be made no more than a year after the entry of judgment. Fed. R. Civ. Pro. 60(c). The use of the word "must" signals the mandatory nature of one-year deadline. *See, e.g.*, 73 Am. Jur. 2d Statutes § 12 ("Words or phrases which are generally

regarded as making a provision mandatory or required include 'shall' and 'must.'").  The structure of the rule emphasizes the rigidity of the time limitation for motions brought under (1), (2) and (3), as compared with the more flexible approach to the catch-all category of motions under (6), which can be brought at any "reasonable time."  Construing Rule 60(c)'s one-year limit as a mandatory claim processing rule is consistent with the Second Circuit's edict that "[t]he one-year limitation period for Rule 60(b) motions is absolute."  *Martha Graham Sch. & Dance Found., Inc.*, 466 F.3d at 100 (internal quotation marks omitted).[4]

Mr. Sanderson failed to make his request for relief under Rule 60(b)(1), (2) and (3) within the one-year time period prescribed by Rule 60(c).  No basis exists to toll that deadline.  Therefore, his motion for relief under those sections of the rule is denied as untimely.[5]

---

[4] In any event, even if equitable tolling applied to Plaintiff's motion, there would no basis for the Court to apply the deadline here.  "[E]quitable tolling is only appropriate in rare and exceptional circumstances."  *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (brackets and quotation omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.* at 80-81.  "Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period"; "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant"; "or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion."  *Id.* at 80 (quotation and citations omitted).  "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."  *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (citation omitted).  Mr. Sanderson has presented no express argument that he is entitled to equitable tolling in this case.  Although there is evidence in the record that Mr. Sanderson has suffered from mental and physical health issues, he has not asserted that any affected his ability to file a timely motion.

At one point in his briefing, Mr. Sanderson argues that no "single, coherent final judgment" was issued in this case.  Reply at 3.  Interpreted with special solicitude, this could be viewed as an argument that the deadline for Mr. Sanderson's motion under Rule 60(b)(1), (2) and (3) should be tolled.  Such an argument has no merit for several reasons.  First, there is one document on the docket identified as a judgment—it was issued on March 1, 2024.  Dkt. No. 402.  Later correspondence about the judgment is not the judgment.  *See, e.g.*, Dkt. No. 424.  Even Mr. Sanderson does not argue that there was no judgment.  Instead, he argues that he does not believe that the judgment is "coherent."  (The source of Mr. Sanderson's apparent confusion regarding the amount he is owed as described in the Court's judgment seems to stem from a failure to understand the meaning of the term "joint and several.").  To the extent that Mr. Sanderson was confused about the nature of the judgment entered in this case, it does not justify equitable tolling "because ignorance of the law is not sufficient to justify equitable tolling."  *Rosenwasser v. Fordham University*, 772 Fed. Appx. 1, 3 (2d Cir. 2019) (summary order) (citing *Ormiston v. Nelson*, 117 F.3d 69, 72 n.5 (2d Cir. 1997)).

[5] Defendants argue that Plaintiffs' motion is also barred by the mandate rule.  *See Sompo Japan Ins. Co. of America v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("The mandate rule prevents relitigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." (quotation marks omitted)); *see also DeWeerth v. Baldinger*, 38 F.3d 1266, 1270 (2d Cir. 1994) (highlighting rule that "a district court does not have jurisdiction to alter an appellate ruling where the appellate court has already considered and rejected the basis for the movant's Rule 60(b) motion . . . .").  The scope of the Second Circuit's

### B.    No "Extraordinary Circumstances" Warrant Rule 60(b)(6) Relief

No extraordinary circumstances warranting relief under Rule 60(b)(6) have been presented to

the Court by Mr. Sanderson.  After excising the various arguments that fall within the scope of Rule

60(b)(1), (2) and (3)—alleged evidentiary or other procedural mistakes by the Court and alleged

misconduct by Defendants—little remains of Mr. Sanderson's requests for relief.  Principally, they

fall into three categories.  First, Mr. Sanderson's concerns regarding the appellate process and the

Second Circuit's opinion.  Reply at 6-9.  Second, concerns related to what Mr. Sanderson describes

as a delay in his access to trial transcripts.  *Id.* at 2.  And, third, Mr. Sanderson's broader concern of

purported "structural prejudice."  *Id.* at 6-7, 25.  None of these individually or in the aggregate meet

the bar required to justify relief under Rule 60(b)(6).

"Rule 60(b)(6) 'grants federal courts broad authority to relieve a party from a final judgment

upon such terms as are just, provided that the motion . . . is not premised on one of the grounds for

relief enumerated in clauses (b)(1) through (b)(5).'"  *Mandala*, 88 F.4th at 361 (quoting *Liljeberg*, 486

U.S. at 863); *see also Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir.

2020) ("Rule 60(b)(6) [is] a catch-all provision . . . .").  "[I]t constitutes a grand reservoir of equitable

power to do justice . . . [b]ut that reservoir is not bottomless."  *Mandala*, 88 F.4th at 361 (internal

quotation marks and citations omitted).  "Relief under Rule 60(b)(6) is reserved for cases that

present 'extraordinary circumstances.'"  *Id.* (quoting *Liljeberg*, 486 U.S. at 863–64).

---

mandate was not limited to the issues specifically addressed in their opinion.  The opinion stated the following:  "We have considered Sanderson's remaining arguments and find them to be without merit."  "*Sanderson*, 2025 WL 1873869, at *2.  Defendants' argument is unquestionably correct as to all of the arguments raised in Mr. Sanderson's initial motion. Whether the mandate rule bars the additional arguments raised in Mr. Sanderson's reply turns on whether the Circuit's mandate implicitly resolved the series of issues raised in the documents that Mr. Sanderson submitted to the Circuit after Defendants' opposition.  As detailed above, Mr. Sanderson submitted a broad array of arguments to the Second Circuit after Defendants' opposition:  they overlap the arguments presented in Mr. Sanderson's reply briefing here.  Because Mr. Sanderson presented those arguments to the Circuit before it resolved his appeal, and the Circuit did not expressly disclaim consideration of those submissions, the Court understands that the mandate implicitly resolved those issues as well.

First, Mr. Sanderson's concerns regarding the Second Circuit's decision on appeal are not a basis for relief under Rule 60(b)(6). The Court lacks authority to displace the Second Circuit's rulings on appeal through the vehicle of this Rule 60(b)(6) motion. This motion does not rest on later events or a change in circumstances. As described above, the issues presented in this case all rest on events that predated the Second Circuit's opinion and which were presented to it by Mr. Sanderson. Therefore, the Court does not have jurisdiction to alter the ruling of the court of appeals. *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1270 (2d Cir. 1994).

Second, Mr. Sanderson's election not to obtain daily trial transcripts does not represent an extraordinary circumstance that justifies reopening this case. The Court understands that Mr. Sanderson takes issue with the fact that Defendants obtained daily trial transcripts but that he did not have access to daily transcripts. Reply at 16. Even in counseled cases, not all parties elect to obtain daily transcripts of trial proceedings because of the additional cost involved. A party's lack of daily trial transcripts does not rise to the high level of extraordinary circumstances that might justify vacatur of a judgment.

Third, Mr. Sanderson's expressed concern regarding "structural prejudice" does not justify relief under Rule 60(b)(6). That is true for at least two reasons. At the outset, while framed as a motion under Rule 60(b)(6), this argument too is time-barred. Mr. Sanderson's argument rests on alleged mistakes by the Court and misconduct by the defendants, the aggregate consequence of which, he argues, is the "structural prejudice" of which he complains. As described above, individually each of those issues must be pursued under Rules 60(b)(1) or (3) and is, therefore, time-barred. Mr. Sanderson cannot escape that limitation by arguing that the cumulative effect of the alleged mistakes and misconduct gives rise to "extraordinary circumstances" warranting relief under Rule 60(b)(6).

Moreover, the fact that it is difficult for a *pro se* litigant to conduct a jury trial against a party represented by experienced counsel is not an extraordinary circumstance meriting a do-over of the action.  Mr. Sanderson argues that the "cumulative effect of evidentiary exclusions, transcript delays, and sustained objections created structural prejudice . . . ."  Reply at 6-7.  And he bolsters his argument by pointing out that more of the defendants' counsels' objections at trial were sustained than his.  The roots of these concerns can be found in the fact that Mr. Sanderson was proceeding *pro se* at trial and his lack of familiarity with the governing legal principles.  One would not expect a neophyte to do as well as introducing, or objecting to, evidence as a trained lawyer.  That Mr. Sanderson found the experience of trying a case *pro se* against experienced counsel is not extraordinary: as the Court informed Mr. Sanderson at the initial conference in this case, it should be expected.  Mr. Sanderson, offered the opportunity to work with counsel, declined to do so.  That the lawyers representing Mr. Sanderson's adversaries were more experienced in trial practice and the law, and, thus, found more success in seeking favorable evidentiary rulings for their clients than Mr. Sanderson, is not an extraordinary circumstance that justifies reopening the case.  Vacating the judgment in this case on that basis would unduly undermine the finality of this *pro se* case, and any other.

IV.    **CONCLUSION**

For the reasons stated above, Plaintiff's Rule 60(b) motion is DENIED.  The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 429 and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: October 23, 2025
New York, New York

GREGORY H. WOODS
United States District Judge